GreeN, Judge,
delivered.the opinion of the court:
On May 13, 1920, the plaintiff entered into a written contract with the defendant to perform certain dredging in the Niagara River and commenced the performance of the contract about June 23, 1920, and completed it about December 21, 1921. For this work the plaintiff was paid the contract price for the work done, less $912.78 deducted by the defendant by reason of the failure of the plaintiff to qpmplete the work within the time provided by the contract.
Plaintiff brings this suit alleging in substance in its petition that after the work was commenced plaintiff discovered that a large part of the material to be dredged was wholly different in character from the material described in the specifications of the contract and was of the nature usually designated as “ hardpan,” that is, a hard compact clay in which was embedded stones and small boulders, whereas the contract described the material to be removed as sand, clay, gravel, and boulders; that as the work progressed this hard material was encountered in increasing quantities and at the northerly end of the contract area termed the “ turn- *575 mg basin ” where the greatest amount of material was to be dredged, the hardpan predominated; and that of the materials dredged under said contract 185,761 cubic yards were hardpan and only 301,312 cubic yards were sand, clay, gravel, and boulders as described in the specifications of the contract.
The plaintiff further alleges that at the time of the advertisement for bids and in the execution of the contract, the defendant knew that hardpan existed in large quantities throughout the area covered by the contract and that it would be costly to dredge, but that the plaintiff was without knowdedge of such facts, and relied on the statements contained in the specifications of the contract.
The petition further recites that by reason of the mis-description of the material to be excavated under the contract, the cost of performing the work greatly exceeded the amount received from the defendant and it asks judgment for the reasonable value of dredging the hardpan encountered in the performance of the contract over and above the contract price, and also for the amount withheld from the contract price by the defendant.
While there is some controversy in the evidence with reference to the facts above set forth and which are alleged in the plaintiff’s petition, we think they are established by a clear preponderance of the evidence. The evidence establishes that much of the material encountered in the performance of the contract consisted of sand, clay, and boulders cemented together in a hard material that was compacted and impervious to water so that it broke into irregular masses when excavated. The evidence abundantly shows that such material is classified by dredging contractors and engineers as “ hardpan,” and that it was in fact hardpan. There is no question but that the Government engineers who prepared the advertisement for bids and the contract knew from reports of excavations previously made for the Government within the area proposed to be dredged that material would be encountered of the kind commonly designated by engineers and dredging contractors as hardpan, and that its exca^tion in the language of the reports, would be “ difficult and costly.” Before making the bid for the con *576 •tract, plaintiff made inquiry of the Government agents with reference to the material to be dredged and it received no information beyond that contained in the contract.
It is urged on behalf of the defendant that the plaintiff’s bid on the contract required it to make an independent examination of the site and ascertain for itself the nature of the work before entering into the contract. In Hollerbach v. United States, 233 U. S. 165, a similar claim was made on behalf of the defendant but the court said, “ We think this positive statement of the specifications must be taken as true and binding upon the Government, and that upon it rather than upon the claimants must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the Government as a basis of the contract left in no doubt.” The evidence shows clearly that neither contractors nor engineers would consider the specifications of the contract with reference to the material to be excavated as including hardpan. We think the language of the Hollerbach case is applicable. Plaintiff had no knowledge of the existence of hardpan in the material to be dredged. True, it could have obtained access to the Government reports on the former excavations, but under the doctrine of the Hollerbach case it was entitled to rely upon the specifications of the contract and was not bound either to look up the Government reports or to make investigations in the channel of the river through borings or otherwise to ascertain the nature of the material to be dredged. In this connection it should be observed that the evidence shows that at the time of year when the contract was entered into it was impractical to make a thorough investigation on account of ice and other difficulties. See also United States v. Atlantic Dredging Co., 253 U. S. 1, and United States v. Spearin, 248 U. S. 132, in both of which cases it is held in substance that a direction to contractors to visit the site and inform themselves of the actual conditions of a proposed undertaking will not relieve from defects in the plans and specifications, and “ that the contractor should relieved, *577 if he was misled by erroneous statements in the specifications.” The evidence shows plainly that the contractor was misled by the specifications.
It is also urged on behalf of the defendant that the plaintiff ought not to recover because the officer of plaintiff corporation executed from month to month certificates ,in which the material dredged was variously described as sand, clay, gravel, boulders, and hard or stiff clay, and it is said that no written protest was made against the decision of the contracting officer nor were any of the other requirements of the contract complied with, which were required in case the contractor believed it was performing extra work not called for by the provisions therein.
The evidence shows that Davis, the Government engineer, told the plaintiff’s agents that if they did not agree that the material dredged was as described in these certificates no money would be paid, and the only recourse was to go to court. In fact, the representative of the Government stated that there would be no payment, even on a basis of the contract price, unless these certificates were signed as prepared by him. The plaintiff’s representative made requests for additional compensation or to be relieved from the contract, but these requests were refused. It was obviously useless for the plaintiff to go any further. In the case of the United States v. Smith, 256 U. S. 11, a similar claim was made that modifications of the contract should be in writing, but the court said: “ The contention overlooks the view of the contract entertained by Colonel Lydecker and the uselessness of soliciting or expecting any change by him,” Lydecker being the representative of the Government in charge. The opinion also says that the contention is “ against the explicit declaration of the contract of the material to be excavated.” In the case at bar it is quite obvious that it would have been useless to go further with Davis. What he said to plaintiff’s representative made it clear that no modification would be made, and we think the failure to obtain such a modification should not prevent the plaintiff from recovering herein; so also the fact that plaintiff’s representative signed the certificates of work done without any mention of hardpan being *578 contained therein is not sufficient cause for denying plaintiff’s claim. Plaintiff’s agent protested Against the form of these certificates and only signed them because of the positive statement of Davis that plaintiff would otherwise receive nothing unless it got it through the courts. Plaintiff was clearly entitled to a certificate showing the kind of material actually excavated and the defendant ought not to benefit by reason of having coerced plaintiff into signing a certificate that did not express the real facts.
The defendant relies on the cases of Sanford & Brooks Co. v. United States, 58 C. Cls. 158, 267 U. S. 455, and Midland Land & Improvement Co. v. United Slates, 58 C. Cls. 671, 270 U. S. 251, but in neither of these cases did the plaintiff rely upon the specifications contained in the contract and in both of them it was expressly held that the plaintiff was not misled by the specifications. In the case at bar the evidence shows that the plaintiff did rely on the specifications and that it was misled thereby. In the face of the record of the previous dredging which had been done for the Government in the same channel, the statements contained in the contract as to the material to be dredged were either known to be false by the Government agents preparing them, or at least constituted such a gross and inexcusable error as to entitle the plaintiff to relief.
In making payment to the plaintiff the defendant deducted $912.78 on account of the failure of plaintiff to complete the dredging within the time specified in the contract. The evidence shows that this failure was caused by the plaintiff encountering in its dredging, material which it had no reason to expect under the contract, and the deduction is without justification. The plaintiff is therefore entitled to recover for the additional cost made necessary in dredging material not provided for by the contract, together with the amount deducted on account of its failure to complete the contract within the time specified therein, and judgment will be entered in its favor accordingly, not to exceed, however, the amount claimed in the petition.
Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.