Williams, Judge,
delivered the opinion of the court:
Mr. O. B. Brock, the original plaintiff in this case, in June 1928, entered into an agreement with the United States, acting through the Forest Supervisor of the Forest Service of the Department of Agriculture, whereby he agreed to purchase from the United States, at specified rates, and cut and remove under prescribed conditions, certain quantities and kinds of timber from 188 acres of land located in the State of West Virginia. Since the filing of the petition and the taking of the evidence in the case, Mr. Brock died, and the administrators of his estate have been substituted as parties plaintiff. Wherever the word “plaintiff” appears in the findings of the court and in this opinion, it refers to Mr. O. B. Brock, and not to the administrators of his estate.
The 188 acres to be cut over adjoined lands owned by the plaintiff upon which he had conducted timber operations, the exact location of the tract being shown on a map attached to the contract. Under the contract the plaintiff was to cut such timber only as was marked and designated by an officer of the Forest Service, prior to the cutting.
Prior to the making of the contract employees of the Forest Service made a cruise of the 188-acre tract for the purpose of estimating the quantities of various kinds of timber to be cut. The estimated amount to be cut is stated in the contract to be:
493 M feet B. M. of sugar maple; 176 M feet B. M. of beech; 96 M feet B. M. of birch; 47 M feet B. M. of basswood, and 13 M feet B. M. of other hardwoods, more or less.
After the making of the contract, the defendant, through its proper employees, proceeded to designate and mark the trees to be cut and plaintiff began the work of cutting and removing the timber so marked. As the work progressed it developed that the estimate in the contract of the quantities of the various kinds of timber to be cut was greatly understated, particularly in respect to the beech. The de *457 fendant designated for cutting, and the plaintiff actually cut and logged, 397,140 feet of beech timber, which was 125.65% over the contract estimate for beech. Because of complaints made by the plaintiff of the overcut of beech, the defendant notified plaintiff that he would not be required to pay the Government the contract price for 66,590 feet of beech that had already been cut into logs, and that he would not be required to remove the same, and also that the plaintiff would not be required to cut 50,000 feet of beech timber left standing on the tract. The plaintiff, however, actually cut and paid for 330,550 feet of beech timber, or 87.81% over the contract estimate for beech timber, on which he sustained a net loss of $3,088.32.
The plaintiff, in this action, seeks to recover his loss on the beech timber. It is urged plaintiff entered into the contract knowing that he might suffer a loss on the beech timber to be cut from the Government’s land, but relied upon the fact that he would realize a profit on the more valuable timber more than enough to equalize any loss he might suffer on the beech; that he relied upon the statements in the contract as to the estimated quantities of the timber to be cut; that he had no way of making intelligent estimates of the timber to be cut by him and was compelled to rely upon the estimates made by the defendant; and that the loss sustained by him was a direct result of the defendant’s inaccurate and misleading estimates. He bases his right to recover upon the authority of Dunbar & Sullivan Dredging Co. v. United States, 65 C. Cls. 567, and the Supreme Court cases there cited.
In the Dunbar & Sullivan Dredging Co. case the plaintiff entered into a contract with the Government to perform certain dredging in the channel of the Niagara Biver. The Government’s specifications of the work to be done upon which plaintiff’s bid was predicated, stated: “The material to be removed is believed to be sand, clay,, gravel, and boulders.” It was further stated in the specifications that “bidders are expected to examine the work and decide for themselves as to its character and to make their bids accordingly.” After work was commenced under the contract *458 it was discovered that a large part of the material to be dredged was wholly different in character from the material described in the specifications of the contract and that it consisted principally of a material commonly known to dredging contractors and engineers as “hardpan”, a material much.more difficult to excavate than that described in the specifications. The cost of excavating hardpan was shown to be about twice the cost of excavating materials described in the specifications. Upon these facts the court held that the contractor was entitled to recover the extra cost incurred by him in the excavation of the hardpan, basing its decision largely on Hollerbach, v. United States, 233 U. S. 165, where it was said:
We .think this positive statement of the specifications ' must' be taken as true and binding upon the Government, and that upon it rather than upon the • claimants must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the Government as a basis of the contract left in no doubt.
The facts in the instant case in our opinion do not bring it within the rule announced in the Hollerbach case and followed by this court in the Dunbar & Sullivan Dredging Co. case. The statement in the contract of the estimated quantities of the various types of timber on the area to be cut, followed by the words “more or less”, did not constitute a warranty and was not a representation binding on the defendant such as the positive statement in the specifications of .¿.contract as to the character of the work to be performed. It was merely an estimate of the probable amounts of the various kinds of timber bought and sold, under the contract, in reference to which good faith is all tliat was required on the part of the defendant.
The contract provided for the purchase and sale of all “merchantable dead timber standing and down on the area designated for cutting by the Forest Officer, and not less *459 than 85% by volume of the total stand of merchantable hardwood timber.” The contract further provided:
All sugar maple will be cut to 16 inches and over in diameter 4% feet above the ground; all basswood will be cut to 16 inches and .[over in] diameter 4 feet above the ground; all beech, birch, and other hardwoods will be cut to 10 inches and over in diameter 4% feet above the ground; to be marked for cutting by the Forest Officer in charge in conformity with the methods exemplified by the' sample marking examined and accepted by us. Trees over these diameters may be left at the discretion of the Forest Officer, or trees under these diameters may be marked for cutting if their removal is considered necessary by the Forest Officer in charge.
These contract provisions bring the case within the class of cases where a contract is made for the sale of goods identified by certain independent circumstances.. The applicable rule in such cases is stated in Brawley v. United States, 96 U.S. 168:
Where a contract is made to sell or furnish certain goods identified by reference to independent circumstances, such as an entire lot deposited in ■ a certain warehouse, or all that may be manufactured by the vendor in a certain establishment, or that may be shipped by his agent or correspondent in certain vessels, and the quantity is named with the qualification of “about”, or “more or less”, or words of like import, the contract applies to the specific lot'; and the naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all. that is required of the party making it. In such cases, the governing, rule is somewhat analogous to that which is applied in the description of lands, where natural boundaries and monuments control courses and distances and estimates of quantity.
Plaintiffs are not entitled to recover, and the petition is dismissed. It is so ordered.
Whaley, Judge; LittletoN, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.