**POTASHNICK v. UNITED STATES.**

No. 49238.

United States Court of Claims.

July 15, 1952.

Tyree C. Derrick, St. Louis, Mo., Karl E. Holderle, Jr., St. Louis, Mo., on the brief, for plaintiff.

Gaines V. Palmes, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The facts material to the claims presented in this action are set forth in the findings. Shortly after October 14, 1942, the District Engineer, U. S. Engineer Office, Vicksburg, Mississippi, issued an invitation for bids for certain excavation, grading, drainage and paving of runways and taxiways necessary for the construction of an airport at Hot Springs, Arkansas. Prior to the invitation for bids, the defendant's engineers in charge of the project prepared certain specifications and drawings for the work. Also, before the invitation for bids was issued, the defendant's engineers made a thorough examination of the site, and made core borings over the entire areas of the work to be included in a contract for an airport, runways, etc., as planned at that time. These borings were made for the purpose of obtaining information and data as to the nature and character of the subsurface conditions of the area, to be furnished to bidders for their use in making their bids for the work involved. The information disclosed and obtained as a result of these borings was carefully recorded by the engineers performing this work for the U. S. Engineer's Office in boring-log field books. Subsequently, the U. S. Engineer's Office prepared a drawing, to be furnished to bidders for this work, containing information relating to the subsurface conditions of the area of the work and the subsurface materials which the bidders would encounter in the performance of such work. This drawing and the information shown thereon constituted a representation by defendant of the subsurface conditions at the site of the work. This drawing containing the boring data recorded thereon by defendant was attached to the plans, specifications and contract drawings, furnished to plaintiff and other bidders with the invitation for bids. As shown in findings 9, 16, 17 and 20, the information obtained by defendant's engineers when making the core borings was not truthfully recorded by the U. S. Engineer's Office on the core-boring data drawing, with the result that plaintiff was misled concerning the actual conditions encountered by the engineers who made the core borings in the area of the work between Stations 20 and 45.

The record shows that plaintiff relied upon the representations made by defendant on the boring-data drawing in making his bid for the work. The explorations made by defendant's engineers in this area between Stations 20 and 45, consisted of boring down to certain elevations when the borings were discontinued because the material encountered was too hard to penetrate with the drilling equipment used in making the borings. The subsurface material so encountered consisted of rock known in the area as blue granite which is very difficult and expensive to excavate by blasting. The information thus obtained by the engineers was noted in the field books in which the boring data were recorded, but when the U. S. Engineer's Office prepared the boring-data drawing, for use by bidders, the information obtained by the engineers and recorded in the field books was not shown on this contract drawing nor was it indicated in the specifications. The boring-data drawing disclosed the subsurface material at the bottom of the holes in the area between Stations 20 and 45 simply as sandstone. Sandstone was encountered in other areas but plaintiff had no difficulty in excavating such material. In all other areas of the contract work, except between Stations 20 and 45, above referred to, the boring data recorded on the contract drawing correctly disclosed the subsurface conditions, and in such areas plaintiff encountered no difficulty and found that the character of the subsurface materials encountered in all areas, except between Stations 20 and 45, was as had been represented by defendant on the boring-data drawing (finding 23). However, in the area between Stations 20 and 45, where the defendant untruthfully represented the subsurface conditions encountered by the engineers who made the borings and where plaintiff encountered blue granite rock, the evidence clearly establishes that plaintiff sustained a loss of $104,719.35, including a reasonable profit of $35,040.77 which plaintiff would

have made if the subsurface materials had been as represented by defendant on the boring-data drawing.

■ The record in this case shows that defendant concealed from plaintiff material information relating to subsurface conditions and gave plaintiff erroneous and misleading information on the boring-data drawing upon which plaintiff relied in making his bid. The representations made by defendant on the core-boring data drawing were a warranty, and the knowledge and concealment from plaintiff of facts and information relating to the true character of the subsurface conditions in the area involved amounted to a misrepresentation, and constituted a breach of warranty and of the contract. In these circumstances the plaintiff is entitled to recover the damages actually sustained by him which, as stated above, we have found to be $104,719.35. United States v. Atlantic Dredging Co., 253 U. S. 1, 7, 11, 40 S.Ct. 423, 64 L.Ed. 735; Hollerbach v. United States, 233 U. S. 165, 172, 34 S.Ct. 553, 58 L.Ed. 898; Christie v. United States, 237 U. S. 234, 241, 242, 35 S.Ct. 565, 59 L.Ed. 933; Virginia Engineering Co. v. United States, 101 Ct.Cl. 516, 533; Ruff v. United States, 96 Ct.Cl. 148, 162, 163; Dunbar & Sullivan Dredging Co. v. United States, 65 Ct.Cl. 567.

[2] The defendant argues that plaintiff may not recover because it did not follow the administrative procedure outlined in Article 4 of the contract entitled "Changed Conditions." Finding 14. Under the facts in this case we are of the opinion that Article 4 does not apply, and plaintiff is not precluded from recovering the damages sustained by reason of the defendant's misrepresentation and breach of warranty concerning subsurface condition of the contract work. Article 4 contemplates the encountering by the contractor or the discovery by the Government during the progress of the work, subsurface and/or latent conditions at the site unknown by either the Government or the contractor at the time of the making of the contract. In this case the defendant knew, but the plaintiff did not know, the nature and the character of the subsurface conditions in the area between Stations 20 and 45. The plaintiff did not

discover that defendant had in fact misrepresented the true nature of the subsurface conditions between Stations 20 and 45 until July 1945, at the hearing of plaintiff's appeal before the War Department Board of Contract Appeals. Finding 20. It was at this hearing that the boring-data field books were made available to the plaintiff.

■ The fact that plaintiff might have presented to the contracting officer a claim under Article 4, along with the claim which it did submit that it had incurred excess costs and sustained losses because he had encountered subsurface materials which he did not anticipate, should not preclude the plaintiff from recovering his loss and damages here by reason of defendant's breach of the contract.

The next item of plaintiff's claim is for the recovery of the sum of $14,343.15 which defendant deducted from the amount otherwise due plaintiff under the contract for actual damages, which the contracting officer determined had been sustained by reason of the inability of plaintiff to complete the entire contract work by October 23, 1943. See Finding 3. The record shows, and we have found as a fact, that plaintiff's inability to complete the work within 240 calendar days from the date of the notice to proceed, or by October 23, 1943, was due to a large extent at least, to the defendant's misrepresentation as to the true nature of the subsurface materials. Since the delay in completing the work was due in large measure to defendant's misrepresentation and concealment of facts known to it, and to which plaintiff was entitled, the defendant had no right under the contract to charge the plaintiff with damages. Standard Steel Car Co. v. United States, 67 Ct.Cl. 445; Dunbar & Sullivan Dredging Co. v. United States, supra; George A. Fuller Co. v. United States, 69 F.Supp. 409, 108 Ct.Cl. 70; Williston On Contracts (Rev. 1936), Vol. 3, p. 1952, par. 677.

Plaintiff made request for extension of time due to the subsurface conditions encountered between Stations 20 and 45, and the contracting officer denied the same. Defendant argues here that plaintiff may

not recover on this item because he did not appeal within 30 days from the decision of the contracting officer denying his application for extension of time. We think this contention is not well taken for the reasons hereinbefore stated, relating to the fact that plaintiff did not make claim under Article 4. Plaintiff is entitled to recover, and judgment will be entered in his favor for $119,062.50. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and WHITAKER, Judges, concur.