## ARCOLE MIDWEST CORP. v. UNITED STATES.

### No. 49761.

United States Court of Claims.
July 13, 1953.

Daniel J. Gluck, Chicago, Ill., Harry H. Kahn and Robert B. Simon, Chicago, Ill., on the briefs, for plaintiff.

Gordon F. Harrison, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff entered into a contract with the United States Corps of Engineers of the Department of the Army of the United States for the construction of a dam on the Fall River, Greenwood County, Kansas, for the sum of $6,107,053.90. The contract was fully performed and the plaintiff has been paid the contract price. It sues for excess costs which it incurred as a result of an alleged misrepresentation by the Government. These excess costs were incurred in constructing a power line about sixteen miles long in order to secure from the Kansas Electric Power Company the power required in performing the contract. The to-

tal cost of constructing this line was $32,-349.85, for which amount plaintiff sues. It alleges that the defendant represented that the power company would deliver adequate power to the site without cost to it.

Paragraph SC–14 of the specifications, which were attached to the invitation for bids, required that the contractor should furnish all necessary electricity at no expense to the Government, but in subparagaph (b) it was stated:

"The Kansas Electric Power Company of Lawrence, Kansas, has stated that electric power (three-phase, 60-cycle alternating current at 7,200/12,-470 volts wye) can be made available to the contractor at the site of the work at the metering point indicated on the drawings. * * * The power company will furnish and install metering equipment at the metering point indicated on the drawings. The contractor will be required to provide his own local distribution system and transformation equipment."

Furthermore, drawing C112–61.1, attached to the invitation for bids, designated a point on the site of the work as "metering pole to be installed by others," and it indicated a line to this metering pole which it designated as "incoming power supply to be installed by others."

In accordance with the requirement of paragraph GC–2 of the specifications, requiring plaintiff to make an investigation of the site and local conditions, including the availability of electric power, the contractor sent its representative to see the Kansas Electric Power Company to confirm the representation made in the specifications and the drawings that electric power would be available at the site of the work. Plaintiff's representative was told that it would be.

However, it developed that the defendant in its inquiry to the Kansas Electric Power Company about the availability of power had stated that it had estimated that the contractor would need about 200 kilowatts for both lighting and power, and the power company's statement that power would be available at the site was based upon this estimate.

Defendant did not advise plaintiff that it had so estimated its need for power, nor that it had advised the power company of this estimate; hence, plaintiff was misled by defendant's statement in its specifications, that the Kansas Electric Power Company had stated that electric power would be "available to the contractor at the site of the work at the metering point indicated on the drawings," and the statements on the drawings. It naturally understood these statements to mean that adequate current would be available. This understanding was confirmed by the statement of the Kansas Electric Power Company.

Plaintiff understood that it would not have to run any outside line to get this power, because the specifications said the power company would furnish and install the metering equipment at the metering point shown on the drawings, and because, further, the drawings expressly stated, "Incoming power supply to be installed by others" and "Metering pole to be installed by others," and, lastly, the specifications said the contractor would have to provide its own local distribution system, thus impliedly stating that any outside lines necessary to bring the power to the metering point would be run by the power company.

Not only was this a reasonable assumption from the representation made by the defendant and the confirmation of it by the Kansas Electric Power Company, but, in addition, plaintiff's survey of the site disclosed that there were two electric power lines in the immediate vicinity of the dam site. One of these was a high tension line located almost directly over the dam site, and the other was a local power line terminating about two miles from the dam site. It developed that existing demands on the local line were so great that the power company could not furnish plaintiff more than 200 kilowatts from this line, and for some reason or other the high tension line was not available at all to furnish power to the site; but the existence of these two lines in close proximity to the dam site, the representations of the defendant, and the

confirmation thereof by the power company naturally misled plaintiff into believing that it would not have to incur any cost for transporting power to the site.

However, when the plaintiff informed the power company that it would need not only 200 kilowatts but perhaps as much as 1250 kilowatts, the power company advised it that power to this extent was not available at the site and that, in order to secure this much power, it would be necessary to construct a power line of about 16 miles in length. This the plaintiff was forced to do.

Plaintiff had not included the cost of running this power line in its estimate, having been led by the defendant to believe that no such cost would have to be incurred.

Plaintiff asked the contracting officer to pay for the cost of running this line, but its request was refused. Plaintiff appealed under article 15 of the contract, but its appeal was denied by the Claims and Appeals Board, whose decision was affirmed by the Chief of Engineers.

■ Defendant says that plaintiff is not entitled to recover because of the provisions of paragraph GC–2 of the specifications requiring the contractor to investigate the site, including the availability of electric power. However, the rule is well established that where the Government makes positive statements in the specifications or drawings for the guidance of bidders, that a contractor has a right to rely on them regardless of contractual provisions requiring the contractor to make investigations. Hollerbach v. United States, 233 U.S. 165, 172, 34 S.Ct. 553, 58 L.Ed. 898; United States v. Atlantic Dredging Co., 253 U.S. 1, 11, 40 S.Ct. 423, 64 L.Ed. 735; Potashnick v. United States, 105 F.Supp. 837, 123 Ct. Cl. 197, 218; Binghamton Construction Co. v. United States, 107 F.Supp. 712, 123 Ct. Cl., 804, 836–837.

■ We are, therefore, of the opinion that plaintiff is entitled to recover of the defendant the amount it cost plaintiff to construct the line the defendant had led it to believe it would not have to construct.

Judgment will be rendered in favor of plaintiff and against defendant for the sum of $32,349.85.

JONES, Chief Judge, and HOWELL, MADDEN, and LITTLETON, Judges, concur.