SCHMELIG CONSTRUCTION CO., INC.,
a corporation, Appellant,

v.

MISSOURI STATE HIGHWAY
COMMISSION, Respondent.

No. KCD 27146.

Missouri Court of Appeals,
Kansas City District.

Aug. 30, 1976.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 12, 1976.

Application to Transfer Denied
Dec. 13, 1976.

Speer, Herzog & Ponfil, Theodore D. Ponfil, St. Louis, for appellant.

Bruce A. Ring, Alfred K. Morlan, Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Schmelig Construction Co., Inc., brought suit against the Missouri State Highway Commission, seeking $124,191.10 damages for breach of warranty of plans and specifications on a highway project contract and for breach of contract. On a jury waived trial, the court found for defendant. This appeal followed.

In 1968, the Missouri State Highway Commission sought bids on a highway project on Route 16 in the town of Canton. The project involved roadway paving and included the installation of storm sewers. The plans and specifications estimated that 6357 cubic yards of "Class 3 Excavation for Structures" would be involved in the work.

Schmelig Construction Co., Inc., a general contracting company, had previously done subcontracting work on highway department contracts and had only recently qualified with the State Highway Commission to receive contracts as a prime contractor. Schmelig received a description of the project and requested the plans and specifications from the State Highway Department. On the basis of the plans and specifications and following personal inspection of the job site by its representatives, Schmelig submitted a bid for the project. One other bid was submitted. Schmelig was the low bidder with a total bid of $335,231.15. Its itemized proposal included removal of the 6357 yards of "Class 3 Excavation for Structures" at $4.50 per yard. (By Section 50.6.4, Missouri Standard Specifications (1961), "Payment for removal of rock * * * will be made at the contract unit price for excavation for structures.") Schmelig's bid was accepted and on October 11, 1968, it entered into a written contract with the respondent for performance of the work.

The contract called for the work to be performed in 110 working days. Work began in December, 1968, but shut down shortly because of adverse weather conditions. When the work resumed in the spring, the contractor, in making the excavation for the storm sewers, encountered a considerable amount of limestone. The highway department had performed drilling tests in the project area in 1966 which showed the presence of the limestone, but no reference to that condition was made in any of the plans or specifications. The on-site inspection by Schmelig's representatives had given them no reason to expect that rock would be encountered and their bid was based upon not encountering rock. According to Schmelig's president, if he had seen the report of the Highway Department District Geologist which showed the presence of rock, Schmelig would not have bid the job because the removal of rock would have been too hazardous, the project being located in an inhabited area, and could not have been completed in 110 days.

Schmelig suggested a change in plans which would have avoided the necessity for removal of the rock, but the Highway Department rejected the proposal and required excavation as called for in the plans and specifications. As a result, Schmelig removed approximately 772 yards of rock by blasting at a cost to it of $90 per yard and 200 yards of rock by hand at a cost of $125 per yard.

The delay caused by removal of the rock contributed to Schmelig's failure to complete the work in the 110 working days fixed by the contract. Liquidated damages of $100 per day for the 72 days additional time for completion were assessed against Schmelig.

The job cost Schmelig in excess of $440,-000. On January 8, 1971, it filed a claim against respondent for $124,191.10 to cover the additional cost of removing the rock. The claim was denied and this litigation followed.

Schmelig's petition was in three counts. Count I was based upon misrepresentation

and concealment. This count was dismissed by the trial court on motion of defendant and no issue is here raised on that action. Count II was based upon breach of warranty as to the sufficiency of the plans and specifications furnished by defendant to plaintiff. Count III was based upon arbitrary action of defendant in refusing to extend the time for completion of the project.

The trial court found against plaintiff on Counts II and III, finding that there had been no express warranty as to the subsoil condition present within the limits of "Class 3 Excavation for Structures" and that the disclaimer provisions of the contract and the duty imposed upon the contractor precluded the existence of an implied warranty on the subject. The court further held that there was no abuse of discretion in failing to grant an extension of time for completion of the project.

■ On this appeal, appellant contends that the failure of respondent to disclose the existence of the rock, known to it, constitutes a breach of warranty of the plans and specifications and a breach of contract.

This is not a case involving an affirmative representation by respondent as to the subsoil conditions on the job. Appellant points to no provision of the plans or specifications as constituting such representation. In the case of *Denton Construction Company v. Missouri State Highway Commission*, 454 S.W.2d 44 (Mo.1970), the court concluded that the plans and specifications there involved in effect represented that the previously prepared roadbed upon which Denton contracted to lay a concrete pavement had been constructed in accordance with such plans and specifications and that the contractor was entitled to recover for breach of warranty as to such condition, the breach consisting of a deficiency in the condition of the roadbed which required the contractor to supply a considerable quantity of material in order to bring the roadbed into condition for paving. See also *Rock Hill Asphalt & Construction Company v. State Highway Commission*, 452 S.W.2d 810 (Mo. banc 1970), concurring opinion of

Finch, J., at page 814: "In my view, if the Commission *affirmatively* represents or warrants matters on which the contractor is entitled to rely, and then breaches that representation, it is liable for such breach." (Emphasis supplied)

Nor is this a case in which the contractor sought the information possessed by the commission and the information was not furnished. Appellant does state that a preconstruction conference was held, attended by representatives of the contractor and of the commission. Appellant asserts that the purpose of the meeting was to discuss possible problems which might be encountered on the job. However, no problem of rock arose in the course of the discussion. Respondent's representatives testified that, if appellant's representatives had asked about rock, they would have told them what they knew, but since the question was not asked, they did not consider it was their "duty to inform them of that." The absence of a request for information distinguishes this case from the case of *Walla Walla Port District v. Palmberg*, 280 F.2d 237 (9th Cir., 1960), cited and relied upon by appellant.

If there was a warranty upon which appellant might have relied, it would have to have been, in effect, an implied warranty by respondent that the plans and specifications contained the necessary information as to subsoil conditions, known to the respondent, to permit appellant to gauge the nature and extent of the work and to bid accordingly. The admitted fact of knowledge on the part of the commission distinguishes this case from *Webb-Boone Paving Co. v. State Highway Commission*, 351 Mo. 922, 173 S.W.2d 580 (1943), where the subsoil condition requiring additional work was known to neither the contractor nor the commission.

Neither party has cited a case in the state in which the issue here presented was passed upon by an appellate court. Respondent points to language in *Webb-Boone*, supra, in which the court disagreed with a contention that the commission was under the duty to "disclose all known conditions or conditions that could have been known by

making a reasonable preliminary investigation." 173 S.W.2d at 584. The court dismissed the contention, stating: "This is not the law." Since that case did not involve a condition known to the commission, what was said about that situation is dictum.

Support for the theory of recovery advanced by appellant is to be found principally in decisions of the Michigan Supreme Court. In the three cases of *Hershey Gravel Co. v. State Highway Department*, 305 Mich. 333, 9 N.W.2d 567 (1943), *W. H. Knapp Co. v. State*, 311 Mich. 186, 18 N.W.2d 421 (1945), and *Valentini v. City of Adrian*, 347 Mich. 530, 79 N.W.2d 885 (1956), the court found liability on the part of the contracting body, based largely upon the failure of such body to reveal facts known to it pertaining to subsoil conditions and unknown to the other contracting party, the conditions encountered having substantially increased the cost of the work. In each of those cases, the plans or specifications in one way or another purported to describe the soil situation but for one reason or another such description did not accurately reflect the conditions known to the contracting body as a result of its testing procedures at the site of the work. In each case, the bidding materials warned the bidder not to rely upon soil notations on the plans and instructed them to satisfy themselves in that regard by examination of the site.

In each case, the court permitted recovery on a theory of breach of warranty based upon failure to reveal to bidders the full knowledge of the contracting agency regarding the subsoil conditions. In *Valentini,* the court stated:

"The withholding by the city of its knowledge of the known conditions, resulting in excessive cost of construction, forms an actionable basis for plaintiff's claim for damages. Nor does the requirement that the contractor examine the specifications and make a personal examination of the site bar the plaintiff from recovering damages caused by the undisclosed subsoil conditions." 79 N.W.2d 887.

In the first two of the above cited cases, there were strong dissents, joined in by three members of the eight-member court. In the *Valentini* case, there was a concurrence in result, under compulsion of the earlier decisions, the author of such opinion noting that in this area, "Michigan has already gone beyond the general rule in most jurisdictions * * *." 79 N.W.2d 893. The dissenters emphasized the obligation imposed upon bidders to make their own examination of the site and the arm's length nature of the dealing between the parties.

In those cases there was at least a basis for arguing and concluding that the contracting agency had represented the subsoil conditions to have been as disclosed by the bidding materials. In this case, the most that appellant has been able to point to is a provision of the Standard Specifications: "The conditions indicated on the plans and in the proposal represent information available from surveys, and studies, but the Commission assumes no responsibility with respect to the sufficiency and accuracy of such data." Section 2.4.1, Standard Specifications (1961). In its brief, appellant asserts that its president testified that the plans "showed numerous subsurface conditions * * *." Examination of the page references cited to support this assertion does not confirm such statement. The witness did testify that the plans did not show rock, but he pointed out no subsurface conditions which did affirmatively appear and appellant has not directed attention to any part of the bidding materials which specify subsurface conditions.

In other cases from other jurisdictions, relied upon by appellant, there was some affirmative representation concerning conditions which was erroneous and not consistent with information in the hands of the contracting agency. Among such cases are *Christie v. United States*, 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933 (1915); *Potashnick v. United States*, 123 Ct.Cl. 197, 105 F.Supp. 837 (1952), and *Alpert v. Commonwealth*, 357 Mass. 306, 258 N.E.2d 755 (Mass.1970). The case of *Davis, et al. v. Commissioners*

*of Sewerage of City of Louisville,* 13 F.Supp. 672 (W.D., Ky., 1936), contains much language relied upon by appellant. However the judgment of the district court in all respects here significant was reversed on appeal. *Commissioners of Sewerage v. Davis,* 88 F.2d 797 (6th Cir., 1937). It might also be noted that that case was considered as based on fraud and deceit and the district court noted that sewer construction is a proprietary function. See *Clark v. City of Humansville,* 348 S.W.2d 369 (Mo.App.1961).

In this case, there was no affirmative representation of subsoil conditions. Appellant was required to make its own inspection of the site and it did so. It made no request for the report on test borings made by the state. In these circumstances, the trial court properly held that there was no warranty by the respondent that the plans disclosed all information known to respondent and no warranty that rock would not be encountered on the project. The trial court, therefore, concluded correctly that no cause of action based upon breach of warranty had been made.

By Count III of its petition appellant alleged that it suffered damages because respondent "arbitrarily  *  *  * refus[ed]  *  *  * several requests for an extension of time in which to complete the project." The trial court found against appellant on this issue. On this appeal, appellant contends that respondent arbitrarily refused either to permit a change in the plans or grant an extension of time. Inasmuch as the issue tried below and upon which the court made its finding was the failure to grant an extension of time, that issue is the only one properly before this court for review.

Section 8.8.2 of the Standard Specifications provides for requests by the contractor for the extension of time to perform the contract. There is no evidence that such procedure was followed. Therefore, the trial court correctly found no arbitrary refusal of extension of time by respondent.

Appellant contends that the trial court erred in failing to strike respondent's pleading because of the failure of respondent to produce documents pursuant to the rules of civil procedure. Appellant's motion was made under Rule 58.01 as it stood prior to the effective date of the new rule, January 1, 1975. Before the motion was presented to the court, respondent's counsel agreed to produce the documents requested. At a conference between the attorneys numerous documents were presented, but during the trial, appellant's counsel discovered that numerous items which should have been produced in response to his request had not been produced. Upon such discovery, appellant filed a motion pursuant to then Rule 61.01 to strike defendant's pleadings. A hearing was had on the motion. The trial judge properly rejected the defendant's position that the documents not produced were protected from discovery as "work products." They included a strip map, showing the existence of limestone, prepared by respondent's staff long before the project was let for bids, as well as the diaries of the daily progress of various phases of the work and other papers.

The trial court was of the opinion, however, that it could not apply the sanction sought by appellant because such remedy was available only when the failure to produce was under a court order and none had issued in this case. The trial court suggested that it would grant a mistrial in order to permit appellant to examine the materials, but appellant's counsel rejected the suggestion. The court then offered to set aside plaintiff's submission, sustain its motion for production, and continue the case to permit plaintiff to present further evidence. To this suggestion, appellant's counsel responded:

"I would prefer myself, rather than to do that, for you just to overrule the motion and proceed. We have a limited budget and what not to work on in these things.  *  *  * I would prefer that the record show that the Court is overruling our motion and that if it's necessary we will take it up at a later time. I still think I'm going to win this lawsuit and it might not be necessary and we would just as soon proceed to a

conclusion rather than have to come back." The court overruled the motion.

In this court, appellant's point is that the trial court erred in failing to strike respondent's pleading and in admitting certain (unspecified) evidence.

The imposition of sanctions for failure to comply with discovery orders is a matter for the exercise of discretion by the trial court. *State ex rel. N. W. Elec. Power Co-operative, Inc. v. Buckstead*, 399 S.W.2d 622 (Mo.App.1966); *Hilmer v. Hezel*, 492 S.W.2d 395 (Mo.App.1973). As Rule 61.01 stood at the time of the trial, the court was empowered to "make such orders in regard to the failure as are just * * *." Striking of pleading was among the sanctions authorized, but the trial court was not limited to such action as is more clearly shown by the present Rule 61.01. Under the language of the rule, the trial court cannot be held to have erroneously concluded that the drastic remedies authorized there were available only in cases in which an order of the court was not obeyed. The trial court here, in any event, offered appellant reasonable alternatives but appellant rejected them. Furthermore, appellant has not on this appeal pointed to specific information of which it might have made use and followed a different trial strategy had the requested documents been produced.

In these circumstances, there has been no showing of abuse of discretion which calls for a reversal of the trial court's judgment.

Judgment affirmed.

All concur.