[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2010
JOHN LEY
CLERK

No. 09-15830
Non-Argument Calendar

_____

D. C. Docket No. 06-00073-CV-W-E

PEARSON'S PHARMACY, INC.,
CAM ENTERPRISES, INC.,
d.b.a. Altadena Pharmacy,

Plaintiffs-Appellants,

versus

EXPRESS SCRIPTS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 10, 2010)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Pearson's Pharmacy and Cam Enterprises appeal the summary judgment in favor of Express Scripts. The district court ruled that Express Scripts did not breach its contracts with Pearson's and Cam by failing to update daily drug cost information because Express Scripts retained sole discretion to amend the manual that determined the frequency of the price updates and did not abuse that discretion or act in bad faith. We affirm.

## I. BACKGROUND

Pearson's and Cam own and operate retail pharmacies in Dadeville and Birmingham, Alabama. Express Scripts is a pharmacy benefit manager that contracts with third-party payors and health plan administrators to facilitate the delivery of medications to members of prescription drug programs. Express Scripts is headquartered in Missouri.

In 1995, Express Scripts executed a Pharmacy Agreement with Pearson's, and Express Scripts and Cam executed a similar agreement in 1999. The agreements provided that Pearson's and Cam would fill prescriptions for members of prescription drug programs and receive payment for those prescriptions based on reimbursement rates defined by Express Scripts. Express Scripts was prohibited from amending the agreement, other than to "comply with any changes required or suggested by . . . regulatory authorities," unless it gave written notice to

and obtained the consent of Pearson's and Cam.

Schedules incorporated in the agreements provided calculations used to reimburse Pearson's and Cam under different prescription drug programs, including a program for the Department of Defense. The schedules stated that, for a brand name drug, the pharmacies would be paid the "Average Wholesale Price" of the drug minus a stated percentage. The schedules did not define the term "average wholesale price," identify a source used to determine the average wholesale price, or state the frequency with which Express Scripts would determine or update the average wholesale price.

The agreements stated that the "Provider Manual" was part of the contract. The manual contained the "practices, policies, rules and procedures" governing reimbursement from Express Scripts. Express Scripts agreed, in subsection E of section 2 of the agreements, to "comply with" the manual.

Express Scripts retained the right to amend freely the manual. The Definitions section of Pearson's agreement stated that the manual "may be revised from time to time," and the same section in Cam's agreement stated that the manual "may be revised from time to time . . . in [the] sole discretion" of Express Scripts. The Miscellaneous section of both agreements stated that Express Scripts could amend "the Provider Manual and all policies and procedures of [Express

3

Scripts], in its sole discretion, and such amendment shall not require consent of Provider or a . . . Pharmacy." The cover of the manual stated that any "[r]evisions, amendments and program updates will be periodically distributed to the Pharmacy Network."

Express Scripts periodically replaced the manual, and Pearson's and Cam received five versions of the manual. The manual stated that Express Scripts based its reimbursement "on the lower of" the "Average Wholesale Price less the contracted discount," the baseline price minus the contracted discount, the maximum allowable cost or submitted cost, or the retail price, "[w]hichever is lowest." The 1997 manual stated that Express Scripts would "update drug information on a weekly basis," but the manuals issued in 2002, 2004, 2005, and 2006 stated that Express Scripts would "update drug information on a daily basis."

In February 2006, Pearson's and Cam filed an amended complaint that Express Scripts had breached its agreements to reimburse for brand name prescription drugs at the average wholesale price as updated on a daily basis. Pearson's and Cam alleged that the price of brand name drugs typically increased and the failure of Express Scripts to make daily updates had "increased [its] profits" and had caused the pharmacies to "lose money." Pearson's and Cam complained that Express Scripts had breached its contracts, made

4

misrepresentations and suppressed information, and been unjustly enriched. Pearson's and Cam also requested injunctive relief that Express Scripts "be required to properly reimburse" the pharmacies "using the 'real time' Average Wholesale Price."

Pre-trial discovery revealed that Express Scripts processed claims for payment to pharmacies using three computer systems: ANCHOR, mini-ANCHOR, and STRATUS. Express Scripts used the ANCHOR system to process commercial claims, the STRATUS system to process worker's compensation claims, and the mini-ANCHOR system to process claims from the Department of Defense. During discovery, representatives of Express Scripts testified that the company received daily, weekly, and monthly updates for the average wholesale price, and the cost updates were downloaded daily to the ANCHOR and STRATUS systems. According to the representatives, the price updates are available on the systems approximately 30 hours after they are received. The representatives testified that Express Scripts receives First DataBank price update files between 7 p.m. and 2 a.m., the files are downloaded by 7 a.m., any errors are resolved with First DataBank, and the files are loaded onto the Express Script systems starting at 8 p.m. The representatives explained that the majority of price updates are not immediate, but are available to use for reimbursement on the effective date.

Express Scripts admitted that the mini-ANCHOR system was updated weekly instead of daily to accommodate the vendor for the Department of Defense. A representative of Express Scripts testified the company did not "have control over" the updating requirement.

Express Scripts moved to dismiss the complaints of misrepresentation and unjust enrichment, which the district court granted. The parties then moved to stay the action on the ground that "[a]n identical national class action asserting th[os]e same claims" against Express Scripts was pending in another federal court. See Inola Drug, Inc. v. Express Scripts, Inc., No. 06-CV-117 (N.D. Okla. Mar. 25, 2009). The district court stayed the action until the court in Inola Drug granted summary judgment in favor of Express Scripts.

Both parties moved for a judgment in their favor. Pearson's and Cam moved for partial summary judgment on the ground that Express Scripts had admitted it had made weekly instead of daily price updates to the mini-ANCHOR system. Express Scripts moved for summary judgment.

The district court granted summary judgment in favor of Express Scripts. The district court ruled that Express Scripts was not liable to Pearson's or Cam for breach of contract because Express Scripts had retained sole discretion to revise its manual and had not abused its discretion or acted in bad faith. The district court

rejected the arguments of Pearson's and Cam that amendments to the manual had to be "formal," "written," and "distribute[d]" to the pharmacies in an updated manual and there was "no factual support for the contention that [Express Scripts] actually made such an amendment." The district court ruled that Express Scripts did not have to distribute amended manuals within "any mandatory time intervals or periods" or, "as astutely recognized in Inola Drug, [to] 'limit or delay until distribution the effective date of amendments which the contract grants [Express Scripts] sole discretion to make.'" "Because the breach of contract fail[ed] and no other substantive claim remain[ed]," the district court ruled that Pearson's and Cam were "not entitled to . . . injunctive relief."

## II. STANDARD OF REVIEW

We review a summary judgment de novo and view the evidence in the light most favorable to the nonmoving party. St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC, 572 F.3d 893, 897 (11th Cir. 2009). Summary judgment should be entered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Pearson's and Cam challenge the summary judgment in favor of Express Scripts. The pharmacies argue that Express Scripts did not amend its agreements

7

to permit weekly in lieu of daily price updates. In the alternative, the pharmacies argue that Express Scripts acted in bad faith when it exercised its discretion to amend the agreements. The pharmacies also argue that the complaint about injunctive relief survives summary judgment. These arguments fail.

Under Missouri law, which the parties agree applies, a contract is interpreted according to its plain language. The conclusion about "'[w]hether a contract is made and, . . . what [its] terms . . . are, depend upon what is actually said and done . . . .'" City of St. Joseph v. Lake Contrary Sewer Dist., 251 S.W.3d 362, 367 (Mo. Ct. App. 2008) (quoting Gateway Exteriors v. Suntide Homes, 882 S.W.2d 275, 279 (Mo. Ct. App. 1994)). A reviewing court determines the terms of the contract by "'disregard[ing] either party's secret surmise or undisclosed assumption'" and "'ascertain[ing] the parties' meaning and intent as expressed in the language used and give effect to that intent.'" Id. (quoting Peet v. Randolph, 33 S.W.3d 614, 618–19 (Mo. Ct. App. 2000)).

A contract may provide for one party to exercise substantial discretion. See Schell v. Lifemark Hosps. of Mo., 92 S.W.3d 222, 230–31 (Mo. Ct. App. 2002); Missouri Consol. Health Care Plan v. Cmty. Health Plan, 81 S.W.3d 34, 47–48 (Mo. Ct. App. 2002). In an arms' length transaction, businesses are free to negotiate the terms of their contract. See Schell, 92 S.W.3d at 230 n.7. Missouri

8

courts recognize a party may retain discretion because parties are expected to impose obligations and extract benefits that enure to their benefit. See id.

Pearson's and Cam executed agreements that vested Express Scripts with significant unilateral discretion to alter its policy about price updates and to amend the manual to reflect any change in that policy. Express Scripts agreed to pay Pearson's and Cam for prescriptions in accordance with prescribed calculations that used the average wholesale price, but the contracts did not guarantee that the price would always be determined at a particular interval. The parties agreed that the "practices, policies, rules and procedures" governing reimbursement were included in the provider manual and that those policies were subject to revision "from time to time" and in the "sole discretion" of Express Scripts. The manual, in turn, stated that any amendments would be "periodically distributed."

Pearson's and Cam argue that Express Scripts did not exercise its discretion to modify its policy and cite as evidence that Express Scripts failed to revise its manual to state that it had changed the timing of its price updates for the mini-ANCHOR program, but we disagree. The agreements did not require Express Scripts to revise the manual or provide notice to the pharmacies before or within a date certain of any modification by Express Scripts of its policy about price updates. Although this substantial discretion might seem unreasonable, it was a

9

term of the contracts accepted by Pearson's and Cam. See Schell, 92 S.W.2d at 230–31 ("In Missouri, the goal of contract law is to flesh out the intent of the parties" and that law does not impose a "general reasonableness requirement" because "it might displace the parties' actual agreement.").

Although Express Scripts could exercise its discretion to revise its policy about price updates, it was bound to act in good faith. "Where a contract confers on one part a discretionary power affecting the rights of the other, a duty is imposed to exercise the discretion in good faith and in accordance with fair dealing." City of St. Joseph, 251 S.W.3d at 369 (internal quotation marks omitted); see Farmers' Elec. Co-op., Inc. v. Missouri Dep't of Corr., 977 S.W.2d 266, 271 (Mo. 1998) (en banc). The covenant of good faith requires that the party refrain from exploiting "changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." Schell, 92 S.W.3d at 230; see, e.g., City of St. Joseph, 251 S.W.3d at 370. In other words, the party cannot "'exercise a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or . . . to deny the other party the expected benefit of the contract.'" City of St. Joseph, 251 S.W.3d at 370 (quoting Missouri Consol. Health Care Plan v. Cmty. Health Plan, 81 S.W.3d 34, 46 (Mo. Ct. App. 2002)). Under this standard, there is no breach of a contract "if the party

10

exercised its discretion based on good-faith business judgment." Cordry v. Vanderbilt Mtg. & Fin., Inc., 445 F.3d 1106, 1112 (8th Cir. 2006) (discussing Missouri Consol.).

Pearson's and Cam failed to create a debatable issue about whether Express Scripts exercised its discretion in a manner contrary to good faith and fair dealing. Express Scripts complied with its manual by downloading price updates daily for its ANCHOR and STRATUS systems. Although Express Scripts failed to download price updates daily for its mini-ANCHOR system, that decision was "based on good-faith business judgment." Cordry, 445 F.3d at 1112. Express Scripts downloaded price updates weekly to accommodate the vendor for the Department of Defense, for whom the system was created. Pearson's and Cam argue that Express Scripts acted in bad faith because two officers of Express Scripts testified that there could be a lag time in downloading price updates that could result in a lower reimbursement price, but we disagree. Pearson's and Cam submitted no evidence that Express Scripts delayed the updates for financial gain or to deprive Pearson's or Cam of increased reimbursements, particularly when a majority of price updates were future dated. The evidence established that Express Scripts exercised its discretion to modify its price updates to support the needs of its business, both to manage the technology used to download the files containing

11

the updates and to accommodate the requirements of its clients.

Pearson's and Cam are not entitled to injunctive relief. Pearson's and Cam sought reimbursement based on an average wholesale price that they contend Express Scripts failed to timely download. To obtain injunctive relief, Pearson's and Cam had to establish that Express Scripts breached their contract. Because the complaint for breach of contract fails, so does the request for injunctive relief.

The district court did not err by granting summary judgment in favor of Express Scripts. The terms of the agreements granted Express Scripts discretion to modify its policy about the timing of price downloads as stated in the manual, and Pearson and Cam did not establish that Express Scripts exercised its discretion in bad faith. In the absence of evidence of a breach of contract, Pearson's and Cam were not entitled to injunctive relief.

## IV. CONCLUSION

The summary judgment in favor of Express Scripts is **AFFIRMED**.